IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 23-cv-01359-DDD-KAS

JOSEPHINE HUBCHIK, an Individual,

 Plaintiff,

v.

OWNERS INSURANCE COMPANY, a Foreign Corporation,

 Defendant.
_____

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**
_____

**ENTERED BY MAGISTRATE JUDGE KATHRYN A. STARNELLA**

 This matter is before the Court on Plaintiff's **Motion to Amend Complaint to Add Allegations to Conform to the Evidence, a Common Law Bad Faith Claim, and a Claim for Punitive Damages** [#38] (the "Motion"). Defendant filed a Response [#47] in opposition to the Motion [#38], and Plaintiff filed a Reply [#51]. The Court has reviewed the briefs, the entire case file, and the applicable law. For the following reasons, the Court **RECOMMENDS** that the Motion [#38] be **GRANTED in part and DENIED in part**.

**I. Background**

 In the present Motion [#38], Plaintiff seeks to amend her Complaint [#5] to add (1) a common law bad faith claim and (2) a claim for punitive damages, as well as supporting allegations for each. Plaintiff asserts that the same factual predicate underlies both the common law bad faith claim and the claim for punitive damages. *Reply* [#51] at 9 ("The same facts and evidence will be involved in all of Plaintiff's claims.") (footnote omitted). Because Defendant primarily objects to amendment on the basis of diligence, delay, and

prejudice, see generally Response [#47], a precise timeline of events is critical, and the Court begins there.

This matter arises from a motor vehicle accident which occurred in Broomfield, Colorado, on October 31, 2019. Compl. [#5] ¶ 10. Plaintiff alleges that she "was stopped behind two other vehicles . . . when she was struck from behind by a speeding 2003 Jeep Liberty driven by Kelsi Shaw." Id. Plaintiff alleges that she suffered serious injury from the collision. Id. ¶¶ 17-36. At the time of the collision, Plaintiff was insured by Defendant under a policy that included underinsured motorist coverage ("UIM"). Id. ¶ 37. On May 31, 2022, Plaintiff sent Defendant a demand for payment of benefits, along with pre- and post-accident medical records, medical bills, and damages information. Motion [#38] at 3.

At an unspecified time after it received Plaintiff's demand, Defendant hired Dr. Anant Kumar to provide opinions on the claim. Id. at 6. On November 3, 2022, Tanya Churchwell ("Churchwell"), a claims specialist for Defendant, sent an email to Plaintiff's counsel stating: "We were just informed that Dr. Kumar had been out of the country and has just returned. I have reached out again to request a status on the report and will forward it to you as soon as I receive it." Def.'s Ex. G [#47-6].

At another unspecified time after Plaintiff filed her claim, Defendant retained Zupkus & Angell, an outside law firm, to coordinate the records review on the claim, and Zupkus & Angell in turn subcontracted a firm named Contegrity to interface with Dr. Kumar. Motion [#38] at 9-10. At some point, Dr. Kumar relayed that he might have a stale conflict of interest in connection with the claim. Id. at 6; Response [#47] at 8 n.1; Pl.'s Ex. 11 [#38-11]. On November 14, 2022, Todd Johnson ("Johnson") of Contegrity sent an email to Alicia Salazar ("Salazar") of Zupkus & Angell stating:

2

> In light of the REALLY old conflict with Dr. Kumar, I did check with the various ortho spine docs and Dr. Sabin can review this one the quickest and confirmed no conflict as far as he could tell from his system. He's got a high per hour rate, but he's pretty efficient in his actual review time relative to other doctors. He said he could get through this file in the next week or so and have a call with Ms. Churchwell to discuss before the final report is provided. Attached is his info, let me know if you want him to proceed with the review or if you would like other options.

*Pl.'s Ex. 13* [#38-13]. On November 30, 2022, Ms. Salazar emailed Mr. Johnson, stating in relevant part: "Dr. Kumar said he performed surgery on Mr. Hubchik (Gordon) in 2005. Our claimant is Josephine. I believe they are married (both are named on the policy). I think this means Dr. Kumar is not conflicted out." *Pl.'s Ex. 11* [#38-11]. On December 4, 2022, Ms. Salazar confirmed that Defendant would continue with Dr. Kumar. *Pl.'s Ex. 14* [#38-14].[1]

On March 28, 2023, Plaintiff filed this litigation, asserting two claims: (1) breach of contract, and (2) violation of Colo. Rev. Stat. § 10-3-1115 for unreasonable delay/denial of payment of benefits. *Compl.* [#5] ¶¶ 78-88. Shortly after, on or about April 4, 2023, Defendant received Dr. Kumar's final report. *Pl.'s Ex. 3* [#38-3] at 157:2-14. On April 24, 2023, Plaintiff's counsel sent an email to Defendant's counsel, stating:

> I wanted to let you know that after receiving and reviewing Dr. Kumar's report last week I have since been informed that he is one of Ms. Hubchik's treating physicians and performed her first neck surgery. This obviously raises concerns about Dr. Kumar now being retained by Owners in adversity to Ms. Hubchik's UIM claim. This is an odd situation and I'm not sure what to make of it, but I wanted to bring it to your attention before we venture much further into the case. If you would like to discuss, please feel free to reach out to me.

---

[1] It is unclear from the parties' submissions when Plaintiff received copies of these November/December 2022 emails, but the timing does not materially affect resolution of the Motion [#38].

*Pl.'s Ex. 8* [#38-8].

On May 11, 2023, June 1, 2023, and July 17, 2023, Ms. Churchwell sent letters to Plaintiff's attorneys on behalf of Defendant. *Pl.'s Exs. 4-6* [#38-4, #38-5, #38-6]. Plaintiff characterizes these letters, which ask for documents relating to a prior accident and settlement documents from a related lawsuit against another insurance company, as "aggressive" and "insinuat[ing] that [Plaintiff] had concealed information" because they mention potential failure to cooperate and fraud. *Id.*; *Motion* [#38] at 5.

On May 8, 2024, the day Plaintiff filed the present Motion [#38], Defendant, via Ms. Churchwell, sent a letter to Plaintiff's attorneys asking Plaintiff to submit to a psychological examination pursuant to the insurance policy's cooperation clause, invoking Colorado's failure-to-cooperate statute. *Pl.'s Ex. 7* [#38-7] (citing Colo. Rev. Stat. § 10-3-1118).[2]

## II. Analysis

Plaintiff's proposed amendments fall into five factual predicates underpinning her allegations of bad faith and punitive damages: (1) Defendant "knowingly delayed its investigation for nearly a year"; (2) Defendant "manipulated that investigation by knowingly or, at minimum, recklessly retaining a treating physician to perform a records review"; (3) Defendant, "after being sued, began making false accusations of 'noncooperation' and 'fraud' related to 'concealment' of information about a 2011 accident

---

[2] Colo. Rev. Stat. § 10-3-1118 took effect on September 14, 2020, and applies to cases filed on or after that date. *Wenzell v. United Servs. Auto. Ass'n*, 552 P.3d 1121, 1127 (Colo. App. 2024). The statute "requires insurers to take certain steps or forfeit any later-asserted noncooperation litigation defense. Period." *Sanchez-Bell v. CSAA Gen. Ins. Co.*, No. 22-cv-01678-WJM-STV, 2024 WL 2817504, at *2 (D. Colo. June 3, 2024) (emphasis omitted). "When an insurer asserts a noncooperation defense, the insurer effectively argues that the insured has failed to comply with a contractual policy provision, thus preventing an insurer from investigating the claim." *Wenzell*, 552 P.3d at 1126.

that [Defendant] indisputably knew about, never previously asked for information about, and was provided information about after asking during litigation"; (4) Defendant, "after being sued, began making direct demands through its adjuster for information that it knew was governed by discovery rules, and threatened 'noncooperation' if such information was not provided outside the bounds of the discovery process"; and (5) Defendant "continues to refuse [to acknowledge], contrary to radiology findings, that Plaintiff suffered any spine injuries other than a 'minor sprain/strain'." *Motion* [#38] at 11-12.

The Court first considers Plaintiff's proposed amendments under Fed. R. Civ. P. 16(b)(4) and 15(a)(2) before turning to the issue of punitive damages.

**A.   Fed. R. Civ. P. 16(b)(4)**

  **1.   Legal Standard**

The Motion [#38] was filed on May 8, 2024, well after the October 19, 2023 deadline for joinder of parties and amendment of pleadings. *Sched. Order* [#22] § 9.a. "After a scheduling order deadline, a party seeking leave to amend must demonstrate (1) good cause for seeking modification under Fed. R. Civ. P. 16(b)(4) and (2) satisfaction of the Rule 15(a) standard." *Gorsuch, Ltd., B.C. v. Wells Fargo Nat'l Bank Ass'n*, 771 F.3d 1230, 1240 (10th Cir. 2014) (citing *Pumpco, Inc. v. Schenker Int'l, Inc.*, 204 F.R.D. 667, 668 (D. Colo. 2001)); *see also* Fed. R. Civ. P. 16(b)(4) (stating that a party seeking to modify a Scheduling Order must show good cause and obtain the judge's consent). If a party fails to establish good cause under Rule 16, a court need not also consider whether Rule 15 is satisfied. *Gorsuch, Ltd., B.C.*, 771 F.3d at 1240; *see also Birch v. Polaris Indus., Inc.*, 812 F.3d 1238, 1248-49 (10th Cir. 2015).

In practice, good cause under Rule 16(b)(4) "requires the movant to show the

scheduling deadlines cannot be met despite . . . diligent efforts" and "may be satisfied, for example, if a plaintiff learns new information through discovery or if the underlying law has changed." *Birch*, 812 F.3d at 1247 (quoting *Gorsuch, Ltd.*, 771 F.3d at 1240); *Pumpco, Inc.*, 204 F.R.D. at 668-69 (finding good cause where "a party first learns, through discovery or disclosures, information necessary for the assertion of a claim after the deadline to amend"). However, if the party knew of the underlying conduct but simply failed to raise a claim or affirmative defense, the claims will be barred. *Gorsuch, Ltd.*, 771 F.3d at 1240 (citations omitted).

### 2. Application

Defendant argues that Plaintiff fails to demonstrate the required good cause under Rule 16(b)(4) with respect to her request to add a common law bad faith claim. *Response* [#47] at 13-14. As noted, if the party knew of the underlying conduct but simply failed to raise a claim based on that conduct, the claim is barred. *Gorsuch, Ltd.*, 771 F.3d at 1240 (citations omitted).

Plaintiff's first asserted basis for amendment is that Defendant "knowingly delayed its investigation for nearly a year." *Motion* [#38] at 11. On May 31, 2022, Plaintiff sent her demand for payment of benefits to Defendant. *Id.* at 3. The deadline for joinder of parties and amendment of pleadings was October 19, 2023. *Sched. Order* [#22] § 9.a. The Court finds that Plaintiff knew of the alleged conduct underlying this claim (i.e., nearly a year of delay) well in advance of that deadline but failed to raise it. Therefore, her common law bad faith claim is barred to the extent premised on the first basis.

The second asserted basis for amendment is that Defendant "manipulated [the] investigation by knowingly or, at minimum, recklessly retaining a treating physician to

6

perform a records review." *Motion* [#38] at 11. However, Plaintiff was aware of Dr. Kumar's purported prior treatment of her no later than April 24, 2023, as evidenced by Plaintiff's counsel's email that day to Defendant's counsel. *Def.'s Ex. G* [#47-6]. The Court finds that Plaintiff knew of the alleged conduct underlying this claim (i.e., Dr. Kumar's potential conflict of interest) approximately six months in advance of the October 19, 2023 deadline for joinder of parties and amendment of pleadings but failed to raise it. Therefore, her common law bad faith claim is barred to the extent premised on the second basis.

The third basis for amendment is that Defendant, "after being sued, began making false accusations of 'noncooperation' and 'fraud' related to 'concealment' of information about a 2011 accident that [Defendant] indisputably knew about, never previously asked for information about, and was provided information about after asking during litigation." *Motion* [#38] at 11-12. In support of this theory, Plaintiff points to three letters that Ms. Churchwell sent, dated May 11, 2023, June 1, 2023, and July 17, 2023. *Pl.'s Exs. 4-6* [#38-4, #38-5, #38-6]. These letters were sent between five and three months before the October 19, 2023 deadline for joinder of parties and amendment of pleadings. To the extent they allegedly demonstrate Defendant's bad faith, Plaintiff could have but failed to amend in a timely manner. Therefore, her common law bad faith claim is barred to the extent premised on the third basis.

Plaintiff's fourth asserted basis for amendment is that Defendant, "after being sued, began making direct demands through its adjuster for information that it knew was governed by discovery rules, and threatened 'noncooperation' if such information was not provided outside the bounds of the discovery process." *Motion* [#38] at 12. In support of this theory, Plaintiff appears to reference the same May 11, 2023, June 1, 2023, and July

7

17, 2023 letters just discussed, as well as the May 8, 2024 letter sent by Defendant. *Motion* [#38] at 5-6; *Pl.'s Ex. 7* [#38-7]. As discussed in connection with the third basis, the common law bad faith claim here is barred as untimely to the extent premised on the three 2023 letters. However, the claim is not barred as untimely to the extent premised on the May 8, 2024 letter, given that the letter was received the day this Motion [#38] was filed.

Finally, Plaintiff's fifth asserted basis for amendment is that Defendant "continues to refuse [to acknowledge], contrary to radiology findings, that Plaintiff suffered any spine injuries other than a 'minor sprain/strain'." *Motion* [#38] at 12; *see generally Depo. of Churchwell* [#38-3] at 63:7-68:24. However, Defendant produced its claim file on September 1, 2023, which contained a note by Ms. Churchwell that "[t]here does not appear to be any acute or traumatic injuries to the cervical, thoracic, or lumbar spines." *Response* [#47] at 14; *Depo. of Churchwell* [#38-3] at 63:17-24. Plaintiff received this claim note, which showed that Defendant was not considering significant spinal injuries, nearly seven weeks in advance of the October 19, 2023 deadline for amendment of pleadings. Plaintiff does not argue that she did not have enough time to review the claim file before the deadline and, even if she did not, she did not move to extend the deadline so she could complete her review. The Court finds that Plaintiff could have but failed to raise this basis in a timely manner. Therefore, the common law bad faith claim is barred to the extent premised on the fifth basis.[3]

---

[3] Plaintiff's arguments and proposed allegations heavily lean on information learned during depositions taken in the three months prior to the filing of the Motion [#38], including (1) Ms. Churchwell's deposition, taken February 2, 2024, *see Pl.'s Ex. 3* [#38-3]; (2) Dr. Kumar's deposition, taken March 15, 2024, *see Pl.'s Ex. 10* [#38-10]; (3) Defendant's Rule 30(b)(6)

Accordingly, the Court **recommends** that the Motion [#38] be **denied** to the extent Plaintiff seeks leave to add a common law bad faith claim *except* to the extent Plaintiff's fourth basis is premised on the sending of and the contents of the May 8, 2024 letter.

**B.    Fed. R. Civ. P. 15(a)(2)**

   **1.    Legal Standard**

Federal Rule of Civil Procedure 15(a)(2) states that "[t]he court should freely give leave [to amend] when justice so requires." "[T]his mandate is to be heeded." *Foman v. Davis*, 371 U.S. 178, 182 (1962). In other words, "[i]f the underlying facts or circumstances relied upon by a [litigant] may be a proper subject of relief, [s]he ought to be afforded an opportunity to test [her] claim on the merits." *Id.* This is consistent with the purpose of Rule 15, which is "to provide the maximum opportunity for each claim to be decided on its merits rather than on procedural niceties." *Hardin v. Manitowoc-Forsythe Corp.*, 691 F.2d 449, 456 (10th Cir. 1982). Whether to grant or deny leave to amend a complaint is within a court's discretion. *Foman*, 371 U.S. at 182. Refusing leave to amend is generally justified only on "a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment." *Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1365 (10th Cir. 1993).

Regarding undue delay, "[l]ateness does not of itself justify the denial of

---

deposition, taken March 22, 2024, *see Pl.'s Ex. 9* [#38-9]; and (4) Ms. Salazar's deposition, taken April 22, 2024, *see Pl.'s Ex. 12* [#38-12] (mislabeled on the electronic docket as "dated 04/22/2022"). However, although Plaintiff may have learned some additional details about her proposed bad faith claim during those depositions, for the reasons stated above, Plaintiff knew about the core conduct in which Defendant allegedly engaged long before the deadline for amendment of pleadings, with the one obvious exception of the May 8, 2024 letter. Thus, the depositions do not change the Court's determination that Plaintiff failed to raise most aspects of this claim in a timely manner.

amendment." *R.E.B., Inc. v. Ralston Purina Co.*, 525 F.2d 749, 751 (10th Cir. 1975). In this Circuit, the undue delay analysis "focuses primarily on the reasons for the delay" and denial of leave is appropriate where a party has no adequate explanation for the delay. *Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1206 (10th Cir. 2006) (collecting cases).

Undue prejudice is the most important factor, but "[c]ourts typically find prejudice only when the amendment unfairly affects the [non-movants] 'in terms of preparing their defense to the amendment,'" such as where the amended claims arise from a different subject matter from that previously set forth in the prior pleading. *Id.* at 1208 (citing *Patton v. Guyer*, 443 F.2d 79, 86 (10th Cir. 1971)); *Hirt v. Unified Sch. Dist. No. 287*, 308 F. Supp. 3d 1157, 1168 (D. Kan. 2018) (acknowledging that "any amendment invariably causes some 'practical prejudice'" but noting that "undue prejudice means that the amendment would 'work an injustice to the [opposing party]'") (quoting *Carefusion 213, LLC v. Pro. Disposables, Inc.*, No. 09-2616-KHV-DJW, 2010 WL 4004874, at *4 (D. Kan. Oct. 12, 2010)).

### 2.  Application

Given the Court's finding's under Fed. R. Civ. P. 16(b)(4) as to four of Plaintiff's five proposed bases for amendment, the Court need only consider Rule 15(a)(2) as to Plaintiff's theory that Defendant, "after being sued, began making direct demands through its adjuster for information that it knew was governed by discovery rules, and threatened 'noncooperation' if such information was not provided outside the bounds of the discovery process," to the extent based on the May 8, 2024 letter. *Motion* [#38] at 11-12; *see Gorsuch, Ltd.*, 771 F.3d at 1240 (stating that, if a party fails to establish good cause, the court need not also consider whether Rule 15 is satisfied).

pg 11 of 16

"An insurer has a legal obligation to deal with an insured fairly and in good faith," and this duty "continues as long as the insurer-insured relationship exists." *Parsons ex rel. Parsons v. Allstate Ins. Co.*, 165 P.3d 809, 815 (Colo. App. 2006). The duty "permeates all of the dealings between the parties." *Travelers Ins. Co. v. Savio*, 706 P.2d 1258, 1268 (Colo.1985). "For an insured to prevail on a bad faith breach of contract claim against an insurer, the insured must establish the insurer acted unreasonably and with knowledge or reckless disregard of its unreasonableness." *Parsons*, 165 P.3d at 814-15. The question of the insurer's "reasonableness under the circumstances" is measured based on industry standards. *Id.* at 815; *Am. Family Mut. Ins. Co. v. Allen*, 102 P.3d 333, 343 (Colo. 2004). "[W]hat constitutes reasonableness under the circumstances is ordinarily a question of fact for the jury." *Bankr. Estate of Morris v. COPIC Ins. Co.*, 192 P.3d 519, 524 (Colo. App. 2008).

Defendant argues under Rule 15(a) that the Motion [#38] should be denied because of undue delay and undue prejudice. *Response* [#47] at 2-5. To the extent that Plaintiff points to the May 8, 2024 letter as evidence of bad faith, she received it the same day she filed the Motion [#38], so there is clearly no delay, not to mention *undue* delay, in seeking amendment based on that letter.[4]

Further, the Court finds that Defendant has not incurred any *undue* prejudice. The Motion [#38] was filed more than two months before the close of discovery, as set at that time. *Minute Order* [#37] (issued May 1, 2024, extending the discovery cutoff to July 22,

---

[4] The Court notes that, even if the other portions of Plaintiff's claim were not barred under Rule 16(b)(4), *see* § II.A.2., the Court would find, in the alternative, that these other portions would be barred as unduly delayed under Rule 15(a)(2).

2024). The May 8, 2024 letter could not have been raised earlier, given the date on which the conduct occurred. Thus, there was no opportunity for either side to conduct any potentially necessary discovery into this claim before Plaintiff filed this Motion [#38]. In other words, this part of the claim was new to both Plaintiff and Defendant and could not have previously been addressed by either side through either fact discovery or expert discovery. To the extent either side believes that limited additional discovery is required based on this claim, the parties may individually or jointly make a prompt request to the Court by way of a written motion, which, if good cause is shown, will cure any possible prejudice.

Accordingly, the Court **recommends** that the Motion [#38] be **granted** to the extent Plaintiff seeks to add a common law bad faith claim relating to Defendant's May 8, 2024 letter.

**C.    Colo. Rev. Stat. § 13-21-102(1.5)(a)**

**1.    Legal Standard**

At the outset, the Court notes that "[t]he Tenth Circuit has not addressed whether [Colo. Rev. Stat.] § 13-21-102(1.5)(a), which is procedural in nature, is applicable to a motion to amend in a federal diversity case applying Colorado law, or whether the inquiry is governed, solely, by Rule 15(a)."[5] *Argo v. State Farm Mut. Auto Ins. Co.*, No. 18-cv-02059-RM-KMT, 2019 WL 4192110, at *2 n.3 (D. Colo. Sept. 4, 2019). However, because other courts in this District have applied the Colorado statute and no party in this case

---

[5] Because the parties' briefing assumes that Colorado law applies with respect to the punitive damages claim, the Court proceeds under the same assumption. *See Grynberg v. Total S.A.*, 538 F.3d 1336, 1346 (10th Cir. 2008) (citing *St. Anthony Hosp. v. U.S. Dep't of Health & Hum. Servs.*, 309 F.3d 680, 703 (10th Cir. 2002)).

12

disputes its applicability, the Court here applies Colo. Rev. Stat. § 13-21-102(1.5)(a). *Id.*; *see, e.g.*, *Espinoza v. Am. Fam. Mut. Ins. Co.*, No. 08-cv-00709-REB-MEH, 2008 WL 4059851, at *2 (D. Colo. Aug. 29, 2008); *Am. Econ. Ins. Co. v. William Schoolcraft, M.D.*, No. 05-cv-01870-LTB-BNB, 2007 WL 160951, at *1-2 (D. Colo. Jan. 17, 2007).

Colorado courts use the terms "punitive damages" and "exemplary damages" interchangeably. *See RCHFU, LLC v. Marriott Vacations Worldwide Corp.*, 445 F. Supp. 3d 1327, 1340 n.7 (D. Colo. 2020) ("'Punitive damages' and 'exemplary damages' have the same meaning.") (citing *White v. Hansen*, 837 P.2d 1229, 1231 n.1 (Colo. 1992) (noting that "exemplary damages" and "punitive damages" have the same meaning in common usage)). Under Colorado law, such damages are available only by statute. *Gruntmeir v. Mayrath Indus., Inc.*, 841 F.2d 1037, 1040 (10th Cir. 1988) (citing *Kaitz v. Dist. Court*, 650 P.2d 553 (Colo. 1982)). Colo. Rev. Stat. § 13-21-102(1)(a) allows the jury to award "reasonable exemplary damages" in any civil action "in which damages are assessed by a jury for a wrong done to the person . . . and the injury complained of is attended by circumstances of fraud, malice, or willful and wanton conduct[.]" However, "[a] claim for exemplary damages in an action governed by this section may not be included in any initial claim for relief. A claim for exemplary damages . . . may be allowed by amendment to the pleadings only after the exchange of initial disclosures . . . and the plaintiff establishes prima facie proof of a triable issue." Colo. Rev. Stat. § 13-21-102(1.5)(a). "The existence of a triable issue on punitive damages may be established through discovery, by evidentiary means, or by an offer of proof." *Leidholt v. Dist. Court*, 619 P.2d 768, 771 (Colo. 1980). The submitted evidence must establish "a reasonable likelihood that the issue will ultimately be submitted to the jury for resolution." *Stamp v.*

13

*Vail Corp.*, 172 P.3d 437, 449 (Colo. 2007) (quoting *Leidholt*, 619 P.2d at 771 n.3). "Prima facie evidence is evidence that, unless rebutted, is sufficient to establish a fact." *Id.* (citation omitted).

"Willful and wanton conduct" is conduct which "an actor realizes is highly hazardous and poses a strong probability of injury to another but nevertheless knowingly and voluntarily chooses to engage in." *Lahey v. Covington*, 964 F. Supp. 1440, 1446 (D. Colo. 1996) (citing *Steeves v. Smiley*, 354 P.2d 1011, 1013-14 (Colo. 1960); *Hodges v. Ladd*, 352 P.2d 660, 663 (Colo. 1960)). However, "mere negligence cannot support an award of exemplary damages[.]" *Jacobs v. Commonwealth Highland Theatres, Inc.*, 738 P.2d 6, 10 (Colo. App. 1986) (citing *Tri-Aspen Constr. Co. v. Johnson*, 714 P.2d 484 (Colo. 1986)).

### 2.     Application

As noted above, Plaintiff asserts that the same factual predicate underlies both her common law bad faith claim and her request for punitive damages. *See Reply* [#51] at 9. Because the rest of the amendments are independently barred as untimely and lacking good cause, the Court only addresses Plaintiff's punitive damages request to the extent based on the May 8, 2024 letter.

At a discovery hearing held on August 23, 2024, the Court and counsel discussed at length the appropriateness of allowing Defendant to seek information outside of the Federal Rules of Civil Procedure and the Scheduling Order, via a "parallel track" of requesting information pursuant to the applicable insurance policy. The parties did not present, and the Court was unable to find, any legal authority, including in the statutory language of Colo. Rev. Stat. § 10-3-1118, clearly demonstrating that Defendant's post-

litigation conduct in seeking discovery pursuant to the policy was impermissible. Additionally, the parties' briefs here do not provide any such legal authority. Although the Court makes no comment regarding whether Defendant's conduct may constitute bad faith, the Court cannot find that Plaintiff has shown prima facie evidence that such conduct rises to the level of willful and wanton. *Cf. Stamp*, 172 P.3d at 449 (Colo. 2007) (defining prima facie evidence as "evidence that, unless rebutted, is sufficient to establish a fact"). Under the circumstances presented here, Plaintiff has not shown sufficient evidence that Defendant should have known that sending the May 8, 2024 letter, and suggesting that it may invoke the noncooperation defense if Plaintiff failed to comply, was "highly hazardous and pose[d] a strong probability of injury" to Plaintiff. *See Lahey*, 964 F. Supp. at 1446. Although Plaintiff clearly disagrees with Defendant's conduct and believes it to be impermissible, and even assuming the conduct *may* form the basis of an arguable common law bad faith claim, the conduct does not warrant the potential imposition of punitive damages under Colorado law.

Accordingly, the Court **recommends** that the Motion [#38] be **denied** to the extent Plaintiff seeks punitive damages.

### IV. Conclusion

Based on the foregoing,

IT IS HEREBY **RECOMMENDED** that the Motion [#38] be **GRANTED in part and DENIED in part**. The Court **recommends** that the Motion be **granted** to the extent that Plaintiff be permitted to add a common law bad faith claim premised on Defendant's conduct relating to the May 8, 2024 letter. The Court **recommends** that the Motion be otherwise **denied**.

15

IT IS FURTHER **ORDERED** that any party may file objections within 14 days of service of this Recommendation. In relevant part, Fed. R. Civ. P. 72(b)(2) provides that, "within 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. 2121 E. 30th St.*, 73 F.3d 1057, 1060 (10th Cir. 1996). The objection must be "sufficiently specific to focus the district court's attention on the factual and legal issues that are truly in dispute." *Id.* "[A] party who fails to make a timely objection to the magistrate judge's findings and recommendations waives appellate review of both factual and legal questions." *Morales-Fernandez v. I.N.S.*, 418 F.3d 1116, 1119 (10th Cir. 2005).

Dated:   October 31, 2024

BY THE COURT:

Kathryn A. Starnella
United States Magistrate Judge