IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 23-cv-01359-DDD-KAS

JOSEPHINE HUBCHIK, an Individual,

    Plaintiff,

v.

OWNERS INSURANCE COMPANY, a Foreign Corporation,

    Defendant.

_____

## ORDER
_____

**ENTERED BY MAGISTRATE JUDGE KATHRYN A. STARNELLA**

This matter is before the Court on Defendant's **Motion for Leave to File Amended Answer to Plaintiff's Complaint (ECF No. 5)** [#95] (the "Motion"). Plaintiff filed a Response [#117] in opposition to the Motion [#95], and Defendant filed a Reply [#120]. The Court has reviewed the briefs, the entire case file, and the applicable law. For the following reasons, the Motion [#95] is **GRANTED**.

### I. Background

In the present Motion [#95], Defendant seeks to amend its Answer [#11] by amending its failure-to-cooperate and fraud defenses. *See also Proposed Am. Answer* [#95-1] (showing a red-line version of the proposed changes). Defendant primarily objects to amendment on the basis of futility, undue delay, and bad faith.[1] *Response* [#117] at 6-

---

[1] Plaintiff's Response [#117] mentions in the Introduction that the Motion [#95] should also be denied based on undue prejudice but then fails to make any argument on that basis. *See* [#117] at 1. The Court therefore does not further consider the issue. *See, e.g., Sawyers v. Norton*, 962 F.3d 1270, 1286 (10th Cir. 2020) (holding that issues presented "only in a perfunctory manner" in an opening brief were waived ); *Nelson v. City of Albuquerque*, 921 F.3d 925, 931 (10th Cir. 2019) (finding that appellant had waived argument by failing to adequately develop it).

14.

This matter arises from a motor vehicle accident, which occurred in Broomfield, Colorado, on October 31, 2019. *Compl.* [#5] ¶ 10. Plaintiff alleges that she "was stopped behind two other vehicles . . . when she was struck from behind by a speeding 2003 Jeep Liberty[.]" *Id.* Plaintiff alleges that she suffered serious injury from the collision. *Id*. ¶¶ 17-36. At the time of the crash, Plaintiff was insured by Defendant under a policy that included underinsured motorist coverage ("UIM"). *Id.* ¶ 37.

The Policy requires that any person making a claim must "submit to examinations by physicians [Defendant] select[s] as often as [Defendant] require[s.]" *Policy* [#54-2] at 31. The Policy further requires that "any person seeking coverage under this policy must cooperate with [Defendant] in the investigation, settlement or defense of any claim or **suit**." *Id.* at 21 (emphasis in original). In addition, the Policy states: "[Defendant] will not cover any person seeking coverage under this policy who has made fraudulent statements or engaged in fraudulent conduct with respect to . . . any **occurrence** for which coverage is sought." *Id.* at 22.

**A.   The Fraud Defense**

Plaintiff's alleged injuries from the accident include fractured ribs, sternum, and thoracic spine and a reinjury to her cervical spine. *Compl.* [#5] ¶¶ 19-25. On May 31, 2022, Plaintiff submitted a time-limited demand to Defendant for the policy limit of her UIM benefits. *Id.* ¶ 41. In that demand, Plaintiff stated, through counsel:

> Given the opinions of [Plaintiff's] treating physicians that her current neck problems are a direct result of the collision and the evidence in the medical records indicating that [Plaintiff's] neck and back problems were under control (with no active treatment) for nearly two-and-a-half years prior to the

> subject collision, we are confident that little-to-no apportionment for preexisting conditions will be ascribed by a jury related to her need for the ACDF surgery at C6-7.

*Demand Letter* [#74-10] at 12. Plaintiff confirmed this statement at her July 9, 2024 deposition. *Pl. Depo.* [#95-2] at 146:12–147:4 (testifying that she was under no active treatment in the years immediately preceding the accident). However, Defendant asserts that "this representation is inconsistent with Plaintiff's pre-accident medical records that reflect treatment for constant and chronic problems affecting Plaintiff's neck and back in the two-and-a-half years prior to the accident." *Motion* [#95] at 3-4 (citing *July 21, 2017 Kubaska Record* [#95-3]; *Aug. 10, 2017 Centeno Record* [#95-4]; *Sept. 20, 2018 Centeno Record* [#95-5]; *May 24, 2019 Kubaska Record* [#82-4]). Defendant also obtained records from Plaintiff's treating physician which show that Plaintiff was taking multiple prescription pain medications and was directed to repeat injections as needed and to continue a home exercise program. *Ex. 83 to Pl. Depo.* [#96-1] at 4-5. Plaintiff testified on June 20, 2024, that she was "probably" taking several prescription medications for a period of time prior to the 2019 accident. *Pl. Depo.* [#95-6] at 61:9-62:3.

Defendant states that, on an unspecified date after this litigation was first filed in state court on March 28, 2023, Defendant discovered that Plaintiff had filed a lawsuit against a different UIM insurer for a 2011 accident in which she claimed materially identical injuries to those claimed in this lawsuit. *Motion* [#95] at 4, 9. Further, the May 31, 2022 pre-litigation Demand Letter [#74-10] did not include any information or disclosure of that lawsuit. *Id*. at 9-10. On July 9, 2024, Plaintiff testified at her deposition that she had settled her 2011-accident lawsuit for an amount that she believed was insufficient to

compensate her damages. *Pl. Depo.* [#95-2] at 141:21–142:12. Defendant believes that "Plaintiff is attempting to recover those uncompensated damages in this lawsuit, in violation of the Policy's fraud clause," because "Plaintiff (i) knowingly conceal[ed] from [Defendant] information about the 2011-accident lawsuit, and (ii) affirmatively misrepresent[ed] her pre-accident medical condition when making the UIM claim," which led to Defendant denying the UIM claim on September 17, 2024. *Motion* [#95] at 4.

**B.     The Failure-to-Cooperate Defense**

In mid-April 2024, Defendant received a medical-causation report from Dr. Eskay-Auerbach, which described Plaintiff's history of chronic pain and diagnosis of depression in the context of studies finding that "pre-morbid psychological dysfunction is a risk factor for the future development of numerous chronic pain conditions including musculoskeletal pain and functional pain disorders." *See Eskay-Auerbach Report* [#44-1] at 17. Dr. Eskay-Auerbach suggested that "[a] psychological assessment would be helpful for the purposes of better understanding the biopsychosocial factors that contribute to [Plaintiff's] clinical picture," to help determine whether factors other than the at-issue accident in this lawsuit were responsible for some of her alleged injuries. *Id.* at 19.

On or about April 30, 2024, twelve days after receiving Dr. Eskay-Auerbach's report and recommendations, Defendant asked Plaintiff to participate voluntarily in a psychological examination. *Motion* [#95] at 5. Counsel for both sides discussed the issue until May 2, 2024, when Plaintiff refused to participate voluntarily. *Id.*; *see also* [#52-1] (emails underlying discussion). Defendant then began the process required under the

Cooperation Statute, i.e., Colo. Rev. Stat. § 10-3-1118,[2] "to protect its rights and ensure it could, if necessary, raise appropriate defenses." *Motion* [#95] at 5. On May 8, 2024, six days after Plaintiff's refusal to voluntarily participated in the psychological evaluation, Defendant sent Plaintiff a cooperation letter. *See* [#43-4]. Plaintiff did not attend an examination within the 60-day cooperation period, and Defendant then sent Plaintiff a second letter advising her that she had an additional sixty days to comply and cure her noncooperation. *See* [#95-7]. Plaintiff still chose not to attend an examination. *Motion* [#95] at 5. Defendant therefore found that Plaintiff intentionally breached the Policy's medical examination provision and cooperation clause, and thus Defendant denied Plaintiff's UIM claim on September 17, 2024. *See* [#95-8].

## II. Analysis

The Motion [#95] was filed on September 20, 2024, well after the October 19, 2023 deadline for joinder of parties and amendment of pleadings. *Sched. Order* [#22] § 9.a. "After a scheduling order deadline, a party seeking leave to amend must demonstrate (1) good cause for seeking modification under Fed. R. Civ. P. 16(b)(4) and (2) satisfaction of the Rule 15(a) standard." *Gorsuch, Ltd., B.C. v. Wells Fargo Nat'l Bank Ass'n*, 771 F.3d 1230, 1240 (10th Cir. 2014) (citing *Pumpco, Inc. v. Schenker Int'l, Inc.*, 204 F.R.D. 667,

---

[2] Colo. Rev. Stat. § 10-3-1118 is a newer statute, only taking effect on, and only applying to cases filed on or after, September 14, 2020. *Wenzell v. United Serv. Auto. Ass'n*, 552 P.3d 1121, 1127 (Colo. App. 2024). The statute "requires insurers to take certain steps or forfeit any later-asserted noncooperation litigation defense. Period." *Sanchez-Bell v. CSAA Gen. Ins. Co.*, No. 22-cv-01678-WJM-STV, 2024 WL 2817504, at *2 (D. Colo. June 3, 2024) (emphasis omitted). "When an insurer asserts a noncooperation defense, the insurer effectively argues that the insured has failed to comply with a contractual policy provision, thus preventing an insurer from investigating the claim." *Wenzell*, 552 P.3d at 1126.

668 (D. Colo. 2001)); *see also* Fed. R. Civ. P. 16(b)(4) (stating that a party seeking to modify a Scheduling Order must show good cause and obtain the judge's consent).

In practice, good cause under Rule 16(b)(4) "requires the movant to show the scheduling deadlines cannot be met despite . . . diligent efforts" and "may be satisfied, for example, if a plaintiff learns new information through discovery or if the underlying law has changed." *Birch v. Polaris Indus., Inc.*, 812 F.3d 1238, 1247 (10th Cir. 2015) (quoting *Gorsuch, Ltd.*, 771 F.3d at 1240). Here, Plaintiff does not argue that the Motion [#95] should be denied on the basis of Rule 16(b). *See generally Response* [#117]. Indeed, the material allegations on which Defendant relies mostly occurred after the October 19, 2023 deadline for joinder of parties and amendment of pleadings. On this basis alone, the Court finds that good cause under Rule 16(b) has been met. *See Pumpco, Inc.*, 204 F.R.D. at 668-69 (finding good cause where "a party first learns, through discovery or disclosures, information necessary for the assertion of a claim after the deadline to amend").

Turning to Rule 15, "[t]he court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). "[T]his mandate is to be heeded." *Foman v. Davis*, 371 U.S. 178, 182 (1962). In other words, "[i]f the underlying facts or circumstances relied upon by a [litigant] may be a proper subject of relief, [s]he ought to be afforded an opportunity to test [her] claim on the merits." *Id.* This is consistent with the purpose of Rule 15, which is "to provide the maximum opportunity for each claim to be decided on its merits rather than on procedural niceties." *Hardin v. Manitowoc-Forsythe Corp.*, 691 F.2d 449, 456 (10th Cir. 1982). Whether to grant or deny leave to amend a complaint is within a court's discretion. *Foman*, 371 U.S. at 182. Refusing leave to amend is generally

justified only on "a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment." *Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1365 (10th Cir. 1993).

## A.   Fraud Defense

Plaintiff argues that Defendant's proposed fraud defense is futile, untimely, and made in bad faith. *Response* [#117] at 10-14.

### 1.   Futility

A proposed amendment is futile only if the pleading, as amended, would not survive a motion to dismiss. *Bradley v. Val-Mejias*, 379 F.3d 892, 901 (10th Cir. 2004). The Court is not inclined to delve deeply into the merits of Defendant's argument regarding futility for several reasons.

"Denying a motion to amend based on futility is uncommon in this District and usually involves claims that are facially unsupported in the proposed amendment." *Electro-mechanical Prods., Inc. v. Alan Lupton Assocs. Inc.*, No. 22-cv-00763-PAB-SP, 2023 WL 5152627, at *3 (D. Colo. July 10, 2023). Futility arguments often can and should be addressed in connection with a motion for leave to amend a pleading, such as when jurisdiction is at issue, but in many situations, futility arguments are best reserved for a motion to dismiss. *See Godfrey v. United States*, No. 07-cv-02165-MSK-MEH, 2008 WL 80302, at *2 (D. Colo. Jan. 7, 2008); *see also Mason v. Fantasy, LLC*, No. 13-cv-02020-RM-KLM, 2016 WL 11697062, at *3 (D. Colo. May 23, 2016) (denying motion on futility grounds were the court lacked original and supplemental jurisdiction over a proposed fraudulent conveyance claim).

Here, the Court finds that Plaintiff's futility argument is better addressed through a different procedure, such as a dispositive motion. Defendant seeks leave to add a new defense, and Plaintiff's futility argument relies on a detailed examination of the allegations in this case. Further, on a motion seeking leave to amend, such arguments are generally underdeveloped because a court lacks the full briefing of a motion, response, and reply regarding the merits of the Rule 12(b)(6) argument. This is particularly true where, as here, the Court has not previously addressed the merits of the litigants' claims. *See Calderon v. Kan. Dep't of Soc. & Rehab. Servs.*, 181 F.3d 1180, 1186 (10th Cir. 1999) ("The liberal granting of motions for leave to amend reflects the basic policy that pleadings should enable a claim to be heard on its merits."). Accordingly, Plaintiff's futility argument is rejected as premature. *See, e.g., Electro-mechanical Prods., Inc.*, 2023 WL 5152627, at *3 ("This court finds that Plaintiffs' proposed amended claim does not fall in the rare category of claims that are more appropriately resolved on futility grounds than on full briefing on a dispositive motion.").

**2.   Undue Delay**

Regarding undue delay, "[l]ateness does not of itself justify the denial of amendment." *R.E.B., Inc. v. Ralston Purina Co.*, 525 F.2d 749, 751 (10th Cir. 1975). In this Circuit, the undue delay analysis "focuses primarily on the reasons for the delay," and denial of leave is appropriate where a party has no adequate explanation for the delay. *Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1206 (10th Cir. 2006) (collecting cases).

Plaintiff argues that the requested amendment is untimely because Defendant received the disability claim file from Plaintiff in December 2023, and the present Motion

[#95] was not filed until September 2024. *Response* [#117] at 13. However, as outlined in the Background section above, Defendant does not base this amendment solely on information obtained from the disability claim file; rather, much of the fraud defense stems from Plaintiff's testimony provided at her depositions in June and July 2024. *See Reply* [#120] at 8. While the Court makes no final determination here, the parties' briefing arguments render unclear whether Defendant could have asserted a fraud defense based solely on the claim file.

Defendant filed the Motion [#95] seeking leave to add the fraud defense on September 20, 2023, three days after denying Plaintiff's claim at least partly on that basis. Given Rule 15(a)(2)'s liberal standard and Defendant's adequate explanation for the timing of its amendment request, the Court finds that there was not undue delay here.

3. **Bad Faith**

Finally, Plaintiff asserts that Defendant "has been accusing [her] of failing to cooperate and 'fraud' since the beginning of the case." *Response* [#117] at 13. Plaintiff states that Defendant has had the information underlying its fraud claim, in particular the information from the disability claim file, since December 2023. *Id.* Plaintiff states:

> Why [Defendant] waited until the close of discovery in this case to request amendment is unexplained. [Defendant's] newly requested defenses appear to be part of a concerted effort to harass [Plaintiff] and to deprive Plaintiff of the opportunity to conduct discovery into new allegations (discovery closed in this case in July 2024). Such "tactical maneuvers" should not be countenanced.

*Id.*

"Bad faith" in the Rule 15 context means "dishonesty of belief, purpose or motive." *Julian v. Clearlink Ins. Agency, LLC*, No. 24-2293-KHV-RES, 2024 WL 4903804, at *3 (D.

9

Kan. Nov. 26, 2024); *see also Crocs, Inc. v. Joybees, Inc.*, No. 1:21-cv-02859-GPG-SBP, 2023 WL 8851822, at *6 (D. Colo. Oct. 6, 2023) ("It does not appear that the Tenth Circuit has yet defined 'bad faith' specifically for purposes of Rule 15, but decisions of this District make plain that it 'can be inferred if the proposed amendment directly contradicts allegations made in the original pleading, such that the original and amended factual accounts cannot be reconciled.'" (citation omitted)). Seeking leave to amend for "improper purpose" such as "unnecessary delay, harassment, or needless increase of the costs of litigation" may also constitute bad faith. *Crocs, Inc.*, 2023 WL 8851822, at *6.

Plaintiff accuses an opposing party of harassment; however, the record does not support such a finding. Defendant filed its Motion [#95] within days of being able to assert its failure-to-cooperate defense and within days of denying Plaintiff's UIM claim on the basis of fraud. Solely for purposes of the present Motion [#95], the Court does not find that Defendant "insinuated that [Plaintiff] had concealed information" when it warned Plaintiff that she must cooperate in the assessment of her claim or when it cited the Policy's fraud provisions. *See Response* [#117] at 3. To the extent the amendments' timing necessitates limited discovery in connection with Defendant's affirmative defenses, Plaintiff may seek leave to conduct that discovery. In short, the Court finds that Plaintiff has not demonstrated that Defendant engaged in bad faith in connection with its requested amendment. Thus, the Court does not find that the Motion [#95] should be denied on the basis of any purported bad faith.

Accordingly, the Motion [#95] is **granted in part** to the extent that Defendant may file an amended answer which adds a fraud defense.

**B.     Failure-to-Cooperate Defense**

Plaintiff primarily argues that Defendant's failure-to-cooperate defense is futile because it is legally impermissible. *Response* [#117] at 6-10. Whether Defendant is legally permitted to assert a failure-to-cooperate defense pursuant to Colo. Rev. Stat. § 10-3-1118 has been debated several times in this case. For example, at a discovery hearing held on August 23, 2024, the Court and counsel discussed at length the appropriateness of allowing Defendant to seek information outside of the Federal Rules of Civil Procedure and the Scheduling Order, via a "parallel track" of requesting information pursuant to the applicable insurance policy. The parties did not present, and the Court was unable to find, any legal authority, including in the statutory language of Colo. Rev. Stat. § 10-3-1118, clearly demonstrating that Defendant's post-litigation conduct in seeking discovery pursuant to the policy was impermissible.[3] The Court determined at that time, and reiterates here, that a decision on whether a defense pursuant to Colo. Rev. Stat. § 10-3-1118 is legally permissible and factually supported is better addressed via dispositive motion, the deadline for which has not yet passed. *See Minute Order* [#72] at 1 ("The dispositive motions deadline is extended to 30 days after final adjudication of Plaintiff's Motion to Amend Complaint to Add Allegations to Conform to the Evidence, a Common Law Bad Faith Claim, and a Claim for Punitive Damages [#38].") (emphasis omitted); *Recommendation* [#119] (pending, addressing the motion to

---

[3] The Court notes that, in another context, the Colorado Supreme Court has explicitly permitted parallel track discovery practices. *See Archuleta v. Roane*, __ P.3d __, __, No. 23SC70, 2024 WL 5036762 (Colo. Dec. 9, 2024) (holding that "a litigant may obtain records under [the Colorado Open Records Act, i.e., "CORA"] even if those records are relevant to pending litigation and the litigant has propounded no document requests under the Rules of Civil Procedure").

amend).

Plaintiff also asserts that Defendant's requested amendments are made in bad faith. *Response* [#117] at 13-14. The Court previously found that Plaintiff could add a common law bad faith claim relating to Defendant's use of Colo. Rev. Stat. § 10-3-1118. *Recommendation* [#119] at 12. The Court does not intend to make a potentially dispositive finding here that Defendant's actions in utilizing a failure-to-cooperate defense are done in bad faith when that is the basis for Plaintiff's common law bad faith claim. Again, resolution of this type of an issue is more appropriate for dispositive motions or for the trier of fact.

Accordingly, the Motion [#95] is **granted in part** to the extent that Defendant may file an amended answer which adds a failure-to-cooperate defense pursuant to Colo. Rev. Stat. § 10-3-1118.

### IV. Conclusion

Based on the foregoing,

IT IS HEREBY **ORDERED** that the Motion [#95] is **GRANTED**. Defendant shall file a clean (non-redlined) version of its Amended Answer [#95-1] within **three business days** of the date of this Order.

Dated:   December 17, 2024

BY THE COURT:

Kathryn A. Starnella
United States Magistrate Judge